Losing, J.,
delivered the oxfinion of the court:
The petitioner claims the net proceeds of twenty-four bales of upland cotton, and the court finds the facts to be—
That previous to June 25,1862, the petitioner held x>ermits from a special agent of the Treasury to purchase cotton in the States of Mississippi and Tennessee. On June 25,1862, he con *413 tracted with .Robert Smith; of Tupper County, Tennessee, for three hundred bales of cotton, to be delivered at Grand .function, Tennessee, within sixty days, by giving notice, said Mix to pay, in gold, 13,14, and 15 cents per pound, as per samples, on delivery at Grand Junction.
At the time required by said contract the said Smith had at Harrison’s gin, near Grand Junction, cotton.for the performance of the contract, and therefrom delivered one hundred and sixty-two bales, under the contract, to Mix, who paid therefor.
After this a portion of said cotton not delivered was burned by the forces of the Confederates in a raid made by them. And an order was issued by General Grant, commanding that military district, forbidding the payment of gold for cotton. Afterward, and in consequence of these circumstances, the said petitioner made a verbal contract with said Smith to. give him 30 cents in currency per pound for the balance of this cotton remaining at Harrison’s gin, and to this Smith agreed.
Soon after this agreement was made twenty-four bales of said cotton at Harrison’s gin were seized by the United States and transported to Jackson, Tennessee, and there sold by them, and the net proceeds thereof, amounting to $o,378 27, were afterward paid into the Treasury of the United States.
On the 26th day of January, 1863, the said Smith, in writing of that date, directed Colonel William S. Hillyer, provost marshal general at Memphis, Tennessee, to deliver to the petitioner an order for the proceeds of said twenty-four bales of cotton.
On the 2d of February, 1863, Colonel Hillyer, in writing of that date, ordered Colonel Charles A. Reynolds, chief quartermaster at Memphis, to deliver to R. W. Smith, or order, the proceeds of said twenty-four bales of cotton.
. A few days after the order last above mentioned the petitioner paid to said Smith the price agreed upon, being 30 cents in currency per pound, for said twenty-four bales.
No action was had on the order of said Hillyer to said Reynolds, and the case being deferred by the order of General Grant, was afterward reported to the Secretary of War, who said it was a subject for judicial decision.
At the timé of the contract for the twenty-four bales of cotton, at 30 cents currency per pound, the United States forces had possession and occupation of Grand Junction and the country where the contract was made, and thereafter held it.
*414 James Mix, the petitioner, lias at all times borne true allegiance to the government of the United States, and has not in any way voluntarily aided, abetted, or given encouragement to rebellion against said government.
The written contract of the 25 th June was executory merely, for a given-number of bales of cotton. And as it could have been performed by the delivery of the given number of any bales corresponding with the samples, no property passed in any specific bags until delivery; and this was manifestly the intent and understanding of the parties, for when- a part of the cotton held by Smith was destroyed before delivery it was treated between them as the loss of. Smith, and “ res perit dominoP
But the subsequent verbal contract wyas for specific bales', so that the thing sold was specified and ascertained between the parties before delivery. Three hundred bales of cotton had been contracted for, and this quantity Smith had in his possession, at Harrison’s gin, and a portion of it was burned, and the verbal contract was “for the balance? This was for an entire quantity, and denoted those bales of cotton which remained of the lot partially burned; and the contract could be performed only by the delivery of those specific bales. It was thus a new contract for a different thing, at a different price, and the thing sold being definite, the property in. it passed at the time the contract was made. The cotton was sold by the pound, and therefore it had to be weighed to ascertain the price, so that something remained to be done between the parties; but where that is necessary merely to ascertain the price, and not to identify the subject of sale, it does not prevent the property from vesting in the vendee by the contract of sale. (2 Comstock, p. 258; 2 Hurlstone & Coltman, p. 200.)
And the conduct of the parties shows that they intended the property should pass before delivery or payment, arid considered that it did; for, before the payment was made, Smith gave the petitioner an order on Colonel Hillyer for the proceeds of the sale of the cotton, and without receiving-those proceeds the petitioner paid Smith for the cotton the price stipulated.
On the evidence, therefore, we think the property in the twenty-four bales of cotton vested in the petitioner when the contract for them -was made and before its seizure by the United States.
*415 Besides this, the petitioner had, at all events, contracted for he specific twenty-four bales, and as against the vendor had acquired the right to complete the contract, if that was only nchoate at the seizure, and the contract was after the seizure completed between the parties, by the payment of the contract price. And under the third section of the Act 12th March, 1803, the United States waive their title, by capture, in favor of loyal claimants, and this should relieve from the consequences of their capture rights of contract, as well as rights of property, and leave the case to be decided as if there had been no capture, and on the title of the claimant as against third parties.
The cotton was sold at Jackson, by a quartermaster, and the net proceeds were deposited on the 27th October, 18G3, at St. Louis, Missouri, with the Assistant Treasurer of the United States, to their credit-, and the evidence does not trace the money further. But under the Act 12th. March, 1863, as well as under the Joint resolution 30th March, 1868, which refers to money that had never reached the Treasury, it'was the duty of the Assistant Treasurer at St. Louis to pay the net proceeds of the cotton in question here into the Treasury, and the legal presumption is that it was done.*
And on the facts stated the court finds that the petitioner is entitled to recover of the United States the net proceeds of said cotton, amounting to $5,378 27, for which judgment is ordered.